UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
WILLIAM SCHAFER, JR., Eт AL.,

                 Plaintiffs,        <u>MEMORANDUM & ORDER</u>
                                             06-CV-2531(JS)(ARL)

    - against -

HICKSVILLE UNION FREE SCHOOL
DISTRICT, Eт AL.,

                 Defendants.

------------------------------------X
APPEARANCES:
For Plaintiff:          Frederick K. Brewington, Esq.
                    556 Peninsula Blvd.
                    Hempstead, New York 11550


For Defendants:

Hicksville Union      Brian S. Sokoloff, Esq.
Free School          Jennifer E. Sherven, Esq.
District,            Sokoloff Stern LLP
Hicksville Board      355 Post Avenue, Suite 201
of Education,        Westbury, NY 11501
Dr. Alan Orenstein,
Dr. Joseph Hayward,
Dr. Joseph Marino,
Maureen Bright
("Hicksville
Defendants")

The Board of        Vincent A. Nagler, Esq.
Cooperative          Callan, Regenstreich, Koster & Brady
Educational          One Whitehall Street
Services of Nassau   New York, NY 10004
County (Nassau
BOCES), Rosemary
Kennedy School
("Nassau BOCES")

John Piccarello,     Christine Gasser, Esq.
Flora Cohen,         Francis X. Schroeder, Esq.
Dr. Mark Curci,     Congdon, Flaherty, O'Callaghan, Reid,
Eric Rauser, and    Donlon, Travis & Fishlinger

```
Paul Schaefer               333 Earle Ovington Blvd., Stes. 502/505
("BOCES                     Uniondale, NY 11553
Individuals")

John Doe(s)        No appearances.
```

SEYBERT, District Judge:

Plaintiff William Schafer, Jr. ("Billy") is a student with disabilities. Billy, appearing by and through Plaintiffs William Schafer, Sr. and Janet Schafer (the "Parents" or "Plaintiffs") sued for damages related to how educators addressed Billy's special education needs. There are three groups of defendants. First is the Hicksville School District (the "School District"; Maureen K. Bright; Dr. Allen Orenstein; Dr. Joseph Hayward; and Dr. Joseph Moreno (collectively, with the School District, the "Hicksville Defendants"). Second is Nassau BOCES.[1] Third is John Piccarello; Flora Cohen; Dr. Mark Curci; Eric Rauscher; and Paul Schaefer (collectively, the "BOCES Individuals").[2]

---

[1] Plaintiffs also sued the Rosemary Kennedy School (the "Kennedy School"). The Kennedy School is a building, not a legal entity. The real party in interest is Defendant Nassau BOCES.

[2] Plaintiffs have named the individual defendants in both their official and individual capacities. As Plaintiffs have also sued the individual defendants' employers, the official-capacity claims against the individual defendants are dismissed as duplicative. See Anemone v. Metropolitan Tranps. Auth., 410 F. Supp. 2d 255, 264 n. 2 (S.D.N.Y. 2006).

All Defendants have moved for summary judgment. For the reasons that follow, the Hicksville Defendants' and the BOCES Individuals' motions for summary judgment are GRANTED. Nassau BOCES' motion for summary judgment is GRANTED IN PART. Nassau BOCES and Plaintiffs are directed to appear before this Court for a pre-trial conference on April 29, 2011 at 9:30 a.m.

<u>BACKGROUND</u>

This case has two distinct themes. First, Plaintiffs allege federal and state law violations arising out of Billy's alleged confinement in the "timeout room" at the Rosemary Kennedy School (the "Kennedy School"), a Nassau BOCES institution. Second, Plaintiffs allege that Billy was wrongly denied a Free Appropriate Public Education ("FAPE").

I. <u>The Parties</u>

Plaintiff Billy is a developmentally disabled male who resides within the defendant Hicksville, New York, Union Free School District. (Proposed Joint Pretrial Order, Stipulated Facts ("JPTO") ¶ 2.) Plaintiffs William Schafer, Sr. and Janet Schafer are Billy's parents (the "Parents").

The Hicksville School District is a defendant in this action, as is its superintendent, Maureen K. Bright, and three of its employees: Dr. Allen Orenstein, at relevant times the

Interim Director of Pupil Personnel Services and Special Education; Dr. Joseph Hayward, the Special Education Superintendent; and Dr. Joseph Moreno, a school psychologist. (JPTO ¶¶ 3-6.)

The Kennedy School is a Wantagh, New York, Nassau BOCES school for children with developmental disabilities. (JPTP ¶ 7.) Defendant John Piccarello is the Kennedy School's principal, defendant Flora Cohen was its assistant principal, defendant Dr. Mark Curci is a Kennedy School psychologist, defendant Eric Rauscher was a Kennedy School teacher, and defendant Paul Schaefer is a Kennedy School employee. (JPTO ¶¶ 8-11.)

## II. Billy's Background and Placement at the Kennedy School

Billy has extensive neuro-developmental deficits and global impairments, and he functions between a three- and five-year old level. (BOCES 56.1 Stmt. ¶¶ 6-7.)[3] He has impaired language and communication skills. (Id. ¶ 8.) According to his Parents, Billy is also claustrophobic. (Pl. BOCES Cntr-Stmt. ¶

_____
[3] Although there are three summary judgment motions pending, there were only two sets of Local Rule 56.1 Statements and Counterstatements. Nassau BOCES and the BOCES Individuals' Rule 56.1 Statement will be cited as "BOCES 56.1 Stmt." and Plaintiffs' counter-statement will be cited as "Pl. BOCES Cntr-Stmt." The Hicksville Defendants' Rule 56.1 Statement will be cited as "Hicksville 56.1 Stmt." and Plaintiffs' counter-statement as "Pl. Hicksville Cntr-Stmt."

103.) As a result of his disabilities, Billy has received special education services since he was two years old. Beginning in Spring 2004, Billy received home services in speech therapy, occupational therapy, and academic instruction. (See Hicksville 56.1 Stmt. ¶ 3.)

On June 2, 2004, Billy's Committee on Special Education (the "CSE") met to discuss Billy's academic placement for the upcoming 2004-05 school year. The Individualized Education Plan ("IEP") that arose out of that meeting provided that Billy would enroll at the Kennedy School in September. (BOCES 56.1 Stmt. ¶ 39.) The IEP also provided for continued homebound instruction. (Pl. BOCES 56.1 Cntr-Stmt. ¶ 39.)

Billy began classes at the Kennedy School in September 2004. (JPTO ¶ 14.) He was fourteen years old at the time. (Id. ¶ 18.) The Kennedy School's assistant principal, Defendant Flora Cohen, screened Billy prior to his enrollment to determine what level of services suited Billy's needs. (JPTO ¶ 19.) Upon enrollment, Billy was assigned to a school psychologist, Defendant Dr. Curci. (BOCES 56.1 Stmt. ¶ 25.) According to Plaintiffs, Billy's Parents only saw the Kennedy School once before Billy began classes there. (Pl. BOCES Cntr-Stmt. ¶ 12.)

III. <u>May 23, 2005 CSE Meeting</u>

Toward the end of Billy's first year at the Kennedy School, his CSE met to discuss his IEP and academic placement for the upcoming 2005-2006 school year. (JPTO ¶ 15.) The meeting was held at the Kennedy School, and it was attended by Billy's Parents and Defendants Curci, Rauscher, Konk and, from the School District, Drs. Orenstein and Moreno. The CSE decided that Billy would return to the Kennedy School in the fall of 2005. (JPTO ¶¶ 28-29.) According to Plaintiffs, the CSE also resolved to provide Billy with home academic instruction for the upcoming year, but the home instruction was inadvertently omitted from the new IEP. (Pl. Hicksville 56.1 Ctr-Stmt. ¶ 15.) Mr. Schafer asked Dr. Orenstein about the omission, and Dr. Orenstein reassured him that Billy would continue to receive home academic instruction. Mr. Schafer made a handwritten note on the IEP to that effect, (<u>id.</u>), and Dr. Curci initialed the note. (<u>See</u> Hicksville 56.1 Stmt. Ex. X at 5.) It is unclear from the parties' briefs and 56.1 statements whether and for how long Billy's home academic instruction was interrupted. As best as the Court can tell from the papers, it appears that there was a break in Billy's home tutoring but that the home instruction resumed approximately a week after the May 23, 2005 CSE meeting.

See infra at 12.

IV. The Timeout Room

When the May 23 CSE meeting was finished, Billy's Parents asked to see their son. (JPTO ¶ 30.) They were escorted to Billy's classroom, but when they got there they were told that Billy had been taken to the timeout room. (JPTO ¶ 31.) The Parents asked to be taken to see Billy, and Dr. Curci escorted them to the timeout room area. When they arrived, Dr. Curci asked Defendant Paul Schaefer, the timeout room monitor, to open the door of a closet-like cubicle. Schaefer did so, and the Parents found Billy crying inside the small space. (See Pl. BOCES Cntr-Stmt. ¶¶ 123-125.) The Parents, shocked and furious at finding their son confined to the cubicle, took Billy home. Billy never returned to the Kennedy School. (BOCES 56.1 Stmt. ¶ 132; JPTO ¶ 33.)

A. The Timeout Room's Physical Space

Classroom 506 of the Kennedy School was the designated "timeout area." According to Plaintiffs, the timeout room was a small, dark room, approximately four feet by five feet, with little or no lighting, (Pl. BOCES Cntr-Stmt. ¶¶ 90-92), and with blue gym matting on the walls and floor. (See William Schafer Dep. at 240, Pl. Ex. C.) It was one of two small rooms within a

larger classroom-type area. (Pl. BOCES Cntr-Stmt. ¶ 95.) The classroom windows were covered with cardboard. (Id. ¶ 96) The door to the timeout room where Mr. Schafer found Billy might have had a window--Mr. Schafer cannot recall--but if it did the window was blocked. (See Id. ¶ 97.) Further, Plaintiffs infer that the timeout room was locked.[4] (See id. ¶ 98.) It is undisputed that Defendant Paul Schaefer was assigned to monitor the timeout room during the time Billy was enrolled at the Kennedy School. (BOCES 56.1 ¶ 92.)

B. Use of the Timeout Room

According to Plaintiffs, Defendants put Billy in the timeout room between twenty-seven and forty times between September 2004 and May 2005. (Pl. BOCES Cntr-Stmt. ¶ 73.) There are twenty-seven reported confinement incidents in Billy's timeout log, (see Pl. BOCES 56.1 Cntr-Stmt. ¶ 100; id., Ex. H) but Defendant Cohen told Mr. Schafer that she thought Billy had been sent to the timeout room forty times. (Pl. Ex. B at 55.)

---

[4] Plaintiffs urge the Court to infer that Billy's cubicle was locked based on the Parents' observation that (a) Dr. Curci had to ask the timeout room monitor to open the cubicle door rather than open it himself, and (b) the timeout room door only swung out, suggesting--in Plaintiffs' view--that it could not be opened from the inside. (See Pl. BOCES Cntr-Stmt. ¶ 98.) Because whether or not the cubicle was locked does not bear on the Court's analysis, it does not decide here whether Plaintiffs' inference is reasonable.

According to the log, Billy was sent to the timeout room for behavior such as "hitting" or "kicking" and also for infractions such as "refusing to work" and "cursing." (Pl. Ex. H.)

Defendants claim that they prepared a Behavioral Intervention Plan ("BIP") for Billy and discussed it with his Parents. (see BOCES 56.1 Stmt. ¶¶ 55-65.) Billy's Parents sharply dispute that they ever had any knowledge of the BIP or the strategies it described. (See, e.g., Pl. BOCES Cntr-Stmt. ¶ 57.) In any event, the BIP appears to permit use of the timeout room only when "Billy is physically aggressive toward others." (Pl. Ex. K at 4.)

C. Were the Parents Aware of Use of Timeout Room?

Billy's Parents maintain that they were completely unaware that the Kennedy School had a timeout room. It was never shown to them when they toured the school, and no one from either the School District or BOCES ever told Plaintiffs about the room. (Pl. BOCES Cntr-Stmt. ¶ 13.) The timeout procedure at the Kennedy School was never explained or described to Plaintiffs, and Billy's Parents were always under the impression that a "timeout" consisted of telling Billy to sit quietly with his hands in his lap. (Pl. BOCES Cntr-Stmt. ¶ 22.) This is consistent with how Billy's Parents described Billy's timeouts

at home. (See Pl. BOCES 56.1 Cntr-Stmt. ¶ 44.) On the one occasion that Mr. Schafer asked Dr. Curci where the Kennedy School timeouts took place, Dr. Curci responded that timeouts were conducted in his office. (Id.)

Students at the Kennedy School maintained a notebook in which their teachers would provide short notes intended to keep parents apprised of their child's progress. Several entries in Billy's notebook mentioned that he had been sent to "timeout" or "TO." According to Plaintiffs, they understood these entries to mean that references to "timeout" meant that Billy had been told to sit quietly, either in the classroom or in Dr. Curci's office. (Pl. BOCES Cntr-Stmt. ¶¶ 71-72.)

Defendants also claim that Dr. Curci called Mr. Schafer to advise him every time Billy was placed in the timeout room. (BOCES 56.1 Stmt. ¶ 73.) Plaintiffs dispute this; they claim that Dr. Curci only spoke with Mr. Schafer on the phone between twelve and fifteen times, far fewer than the approximately forty times Billy was placed in the timeout room. (Pl. 56.1 Stmt. ¶ 73.) Further, Plaintiffs claim that, to the extent Dr. Curci may have mentioned that Billy had a "timeout," Mr. Schafer assumed that to mean that Billy was told to sit quietly, not that Billy was locked in a closet. (Pl. 56.1 BOCES

Counter-Stmt. ¶ 73.)

Defendants also claim that they reviewed their strategies and procedures for keeping Billy on task--which included timeouts and physical re-direction--during at least two meetings (March 17, 2005 and May 9, 2005). (BOCES 56.1 Stmt. ¶¶ 74, 88) Billy's Parents disagree that they were told about the timeout room at these meetings and that they consented to physical contact as a method of redirecting their son. (Pl. BOCES 56.1 Counter Stmt. ¶¶ 83, 88.)

V. Billy's Response to the Timeout Room

According to Plaintiffs, Billy was traumatized by the timeout room. Among other things, Plaintiffs claim that Billy would become agitated and yell "no blue room" when he heard the work "mark." (Pl. Hicksville 56.1 Cntr-Stmt. ¶ 20.) Billy's therapist characterized Billy's timeout-room experience as traumatizing and opined that returning Billy to the Kennedy School would "exacerbate the present stress reaction to trauma." (Id. ¶ 24.) Plaintiffs also point to Billy's historical transitioning problem. According to Plaintiffs, these transitioning problems were magnified when Billy attended the Kennedy School, and Billy would say "no bus, no school, no blue room" when he refused to board the bus. (Pl. BOCES 56.1 Stmt. ¶

11

29.) "Blue room" was apparently a reference to the timeout room's blue-padded walls.

## VI. Events Following the May 23, 2005 CSE Meeting

After Billy's Parents discovered the timeout room at the May 23 CSE meeting, they refused to send Billy back to the Kennedy School. In the days that followed, Dr. Orenstein apologized to Mr. Schafer for the timeout room, (Pl. Hicksville Cntr-Stmt. ¶ 17), and Mr. Schafer asked Dr. Orenstein to explore other placements. (Hicksville 56.1 Stmt. ¶ 18.) Dr. Orenstein agreed to look at other placements, but cautioned Mr. Schafer that finding something suitable would take some time. (Id. ¶ 19.)

In the meantime, Defendants arranged for home academic instruction.[5] Defendants maintain that they reinstated home instruction to compensate for the instruction Billy was missing as a result of his being pulled from the Kennedy School. Plaintiffs maintain, however, that Defendants were obligated to continue home academic instruction based on the IEP that was approved and initialed at the May 23 CSE meeting. See supra at 6; Pl. Hicksville Cntr-Stmt. ¶ 23. In any event, Plaintiffs

---

[5] Again, it is not entirely clear at what point Billy's home tutoring was interrupted, see supra at 6, but apparently there was a break in home services around the time of the May 23 CSE meeting.

allege that, in an August 4, 2005 meeting, Defendants proposed to withdraw home instruction. (Pl. Hicksville Opp. at 3.) Plaintiffs had served notices of claim on the School District and Nassau BOCES in July of 2005, (Pl. Exs. LL, JJ) and, in Plaintiffs' view, removing home instruction was in retaliation for Plaintiffs' anticipated lawsuit. (See Pl. Hicksville Opp. at 3). Plaintiffs contend that they were presented with a stark "Hobson's Choice": return Billy to the Kennedy School, or lose home academic services. (Pl. Hicksville 56.1 Cntr-Stmt. ¶ 41.)

VII. Plaintiffs' Legal and Administrative Remedies

Plaintiffs filed this suit on May 23, 2006. Five months later, they filed a due process complaint with the School District. The due process complaint challenged Billy's IEPs for the 2006-07 school year and, after a due process hearing, the hearing officer found for the School District. The hearing officer also noted that he could not discern whether Plaintiffs also intended their due process complaint to challenge IEPs from 2005. Plaintiffs appealed the hearing officer's decision to a State Education Department state review officer (the "SRO"). The SRO found that there were procedural defects at the August 2005 CSE meeting (where Plaintiffs learned that school officials intended to terminate Billy's home instruction), and he awarded

Plaintiffs ten months' of compensatory home services. (See Hicksville 56.1 Stmt. ¶¶ 45-49.)

VIII. This Lawsuit

In this action, Plaintiffs assert the following nineteen causes of action: (1) on behalf of Billy, a Section 1983 claim that all Defendants violated Billy's constitutional rights secured by the Fourth, Fifth and Fourteenth Amendments; (2) on behalf of the Parents, a Section 1983 Claim that all Defendants violated the Parents' right to a "free and 'appropriate public education'" secured by the Fifth and Fourteenth Amendments; (3) on behalf of Billy and the Parents, a Section 1983 claim that all Defendants conspired to deprive Billy of his rights in violation of the Fourteenth Amendment; (4) on behalf of Billy and his Parents, a claim under IDEA that Nassau BOCES and the Hicksville Defendants failed to provide Billy with a FAPE; (5) on behalf of Billy, a claim under the ADA that Nassau BOCES and the Hicksville Defendants discriminated against Billy on the basis of his disability and retaliated against Billy for his Parents' opposing the Defendants' actions; (6) on behalf of Billy, a claim under New York State Constitution Article XI, Section 1 that all Defendants deprived Billy of a "meaningful, appropriate or . . . fitting education";

14

(7) on behalf of Billy, a claim under state law against John Doe(s) for battery; (8) on behalf of Billy, a claim under state law against the Hicksville School District and Nassau BOCES asserting vicarious liability for battery; (9) on behalf of Billy, a claim under state law against John Doe(s) for assault; (10) on behalf of Billy, a claim under state law against the Hicksville School District and Nassau BOCES asserting vicarious liability for assault; (11) on behalf of Billy, a claim under state law against John Doe(s), the Hicksville School District, and Nassau BOCES for false imprisonment; (12) on behalf of Billy, a claim under state law against all Defendants (except Dr. Orenstein) for negligence; (13) on behalf of Billy, a claim under state law against the Hicksville School District and Nassau BOCES for negligent hiring and supervision; (14) on behalf of Billy and his Parents, a claim under state law against all Defendants for breach of contract; (15) on behalf of Billy and his Parents, a claim under state law against all Defendants for intentional infliction of emotional distress arising out of Defendants' confining Billy in the time-out room; (16) on behalf of the Parents, a claim under state law against all Defendants for intentional infliction of emotional distress arising out of the Parents' discovery of Billy's placement in the time-out

room; (17) on behalf of Billy, a claim under state law against all Defendants for negligent infliction of emotional distress; (18) on behalf of the Parents, a claim under state law against all Defendants for negligent infliction of emotional distress; and (19) on behalf of Billy and his Parents, a claim against all Defendants for punitive damages.

For the reasons that follow, the Hicksville Defendants' and the BOCES Individuals' motions for summary judgment are GRANTED. Nassau BOCES' motion for summary judgment is GRANTED IN PART.

<u>DISCUSSION</u>

As discussed above, this case has two distinct parts. For ease of discussion, the Court first addresses Plaintiffs' claims arising out of Billy's confinement and then it considers the claims related to Billy's FAPE.

I.   <u>Standard of Review under Federal Rule of Civil Procedure 56</u>

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548,

2552, 91 L. Ed. 2d 265, 273 (1986); see Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 250-51, 106 S. Ct. 2505, 2511, 91 L.
Ed. 2d 202, 213 (1986); McLee v. Chrysler Corp., 109 F.3d 130,
134 (2d Cir. 1997); see also FED. R. CIV. P. 56(c). "In assessing
the record to determine whether there is a genuine issue to be
tried . . . the court is required to resolve all ambiguities and
draw all permissible factual inferences in favor of the party
against whom summary judgment is sought." McLee, 109 F.3d at
134. The burden of proving that there is no genuine issue of
material fact rests with the moving party. Gallo v. Prudential
Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994)
(citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320
(2d Cir. 1975)). Once that burden is met, the non-moving party
must "come forward with specific facts," LaBounty v. Coughlin,
137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party," Anderson, 477 U.S. at 257, 106 S. Ct.
at 2514-15, 91 L. Ed. 2d at 218. "Mere conclusory allegations
or denials will not suffice." Williams v. Smith, 781 F.2d 319,
323 (2d Cir. 1986). And "unsupported allegations do not create
a material issue of fact." Weinstock v. Columbia Univ., 224
F.3d 33, 41 (2d Cir. 2000).

II. <u>Timeout Room Claims</u>

Plaintiffs assert both federal and state law claims arising from Billy's confinement.

A. <u>Federal Timeout Room Claims</u>

Plaintiffs' Section 1983 claims allege that all Defendants violated Billy's constitutional rights by confining him in a dark, closet-sized timeout room without, among other things, adequate supervision and adequate safety measures for monitoring his physical and emotional health. (Compl. ¶ 100.)

1. <u>Section 1983</u>

Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. To prevail on a claim under this statute, a plaintiff must establish: (1) that the defendant acted under color of state law; and (2) that as a result of the defendant's actions, the plaintiff suffered a deprivation of his or her rights or privileges as secured by the Constitution or laws of

the United States.  See Am. Mfr. Mut. Ins. Co. v. Sullivan, 526
U.S. 40, 49-50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130, 143
(1999).  "It is well-settled that [Section] 1983 does not create
a federal right or benefit; it simply provides a mechanism for
enforcing a right or benefit established elsewhere."  Morris-
Hayes v. Board of Educ. of Chester Union Free Sch. Dist., 423
F.3d 153, 159 (2d Cir. 2005).

Before considering the merits of Plaintiffs' Section
1983 claims, the Court must clarify the underlying federal
statutes or constitutional provisions at issue.  Plaintiffs
assert that Defendants violated Billy's Fourth Amendment right
to be free from unreasonable seizures and his Fourteenth
Amendment rights to substantive and procedural due process.[6]  As
an initial matter, under Graham v. Connor, Plaintiffs' Fourth
Amendment and substantive due process claims are mutually
exclusive.  490 U.S. 386, 394-95, 109 S. Ct. 1865, 1870-71, 104
L. Ed. 2d 443 (1989).  Under Graham, the substantive due process
analysis is inapplicable where the challenged governmental
conduct is regulated by another, more specific constitutional

---

[6] The Fifth Amendment's Due Process Clause applies only to federal
actors and is thus inapplicable to this case.  To the extent,
then, that Plaintiffs base their claims on the Fifth Amendment,
those claims are dismissed.  See Dusenbery v. United States, 534
U.S. 161, 167, 22 S. Ct. 694, 151 L. Ed. 2d 597 (2002).

amendment--in this case, the Fourth. Id. Thus, the Court must first determine whether a Fourth Amendment or substantive due process analysis applies to Billy's federal timeout room claims. The Court's research has unearthed conflicting views. Compare Rasmus v. Arizona, 939 F. Supp. 709, 717 (D. Ariz. 1996) (explaining that substantive due process could not be basis for a timeout room claim); with Doe v. S & S Consol. I.S.D., 149 F. Supp. 2d 274, 287 (E.D. Tex. 2001) (noting that substantive due process, not Fourth Amendment, formed basis for timeout room claims).

In the Court's view, the Fourth Amendment regulates the Defendants' alleged conduct vis-à-vis the timeout room and thus it, not substantive due process, applies to this case. It is well-settled that the Fourth Amendment limits the circumstances under which school officials may search students. See New Jersey v. T.L.O., 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985). Case law addressing whether the Fourth Amendment similarly limits seizures in the schoolhouse context is relatively limited, however, especially in this Circuit. The Court is persuaded by the district courts in this Circuit that have analyzed school seizure claims under the framework set forth in TLO. See DeFelice ex rel. Defelice v. Warner, 511 F.

Supp. 2d 241, 247 (D. Conn. 2007) (plaintiff's claim that she was confined to principal's office for 20-30 minutes by school employee who kept his hand on the doorknob for the duration of the meeting should be analyzed under Fourth Amendment reasonableness standard); <u>Bisignano v. Harrison Central School Dist.</u>, 113 F. Supp. 2d 591, 596 (S.D.N.Y. 2000) (Fourth Amendment applies to claim that teacher forcibly detained student in a closet).

a. <u>Fourth Amendment Claim</u>

In this case, the relevant Fourth Amendment inquiry is whether there was a seizure and, if so, whether that seizure was reasonable. In the schoolhouse, a seizure is reasonable if it was (1) "justified at its inception" and (2) "reasonably related in scope to the circumstances which justified" the seizure in the first place." <u>Bisignano</u>, 113 F. Supp. 2d at 597 (quoting <u>T.L.O.</u>, 469 U.S. at 341). In evaluating a challenged seizure, the Court reviews the totality of the circumstances. <u>See</u> <u>Phaneuf v. Fraikin</u>, 448 F.3d 591, 597 (2d Cir. 2006); <u>Vassallo v. Lando</u>, 591 F. Supp. 2d 172, 195 (E.D.N.Y. 2008). Based on the evidence in the summary judgment record, a jury could reasonably conclude that Billy was the victim of an unreasonable seizure.

Generally speaking, a Fourth Amendment seizure occurs when a subject's freedom of movement is restrained or terminated by the intentional conduct of a government official. <u>See</u> <u>Brendlin v. California</u>, 551 U.S. 249, 254, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). Here, the jury could conclude that Kennedy School employees intentionally restrained Billy's movement by confining him in the timeout room. Among the evidence supporting an inference that Billy was not free to leave is his father's testimony that Billy was crying in the timeout room when he was discovered. (<u>See</u> Pl. BOCES Cntr-Stmt. ¶¶ 123-25.)

With respect to whether Billy's confinement was reasonable, the Defendants have not met their burden of demonstrating that there exists no material issue of fact left for trial. A schoolhouse seizure is reasonable when it is justified at its inception and reasonably related to the incident that prompted the seizure in the first place. Here, the evidence is inconclusive as to how many times Billy was put in the timeout room, let alone the circumstances that prompted the confinement in each case. Compare, for example, Billy's BIP, which provided for the timeout room when he exhibited aggressive behavior, with the timeout log, which indicates that

he was confined for refusing to do his schoolwork.  (See Pl. Ex. K (BIP); Ex. H (timeout log).)

### b. Procedural Due Process Claim

Plaintiffs also assert a Section 1983 claim that Billy's confinement violated his Fourteenth Amendment procedural due process rights.  Under certain circumstances, a due process violation may lie where a student has been excluded from the classroom without an opportunity to be heard.  See, e.g., Couture v. Bd. of Educ. of Albuquerque Pub. Sch., 535 F.3d 1243, 1256 (10th Cir. 2008).  De minimus exclusions from the classroom, however, do not trigger due process protections.  See id.  Precisely where to draw the line between meaningful and de minimus deprivations is not entirely clear, but the Court is persuaded by Couture v. Board of Education of Albuquerque Public Schools, a recent timeout room case.  535 F.3d 1243 (10th Cir. 2008).  In Couture, the plaintiff was confined 21 times over two and a half months for a total of approximately 12 hours.  Id. at 1257.  The court held these incidents did not amount to the level of deprivation that triggers due process protections.  Id.

The Court reaches the same conclusion in this case. Billy was sent to the timeout room between 27 and 40 times over the course of nine months (September to May), each time for a

period ranging from five minutes to, on one occasion, an hour.
(See Pl. Ex. H.)  The Court finds that this does not rise to the
level of a procedural due process violation.  Cf. Goss v. Lopez,
419 U.S. 565, 576, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) (a
ten-day suspension from school is not de minimus).  Accordingly,
Defendants are entitled to summary judgment on Plaintiffs'
timeout room procedural due process claim.

### 2. Liability for Plaintiffs' Section 1983 Claims

Although Billy has raised triable issues of fact
concerning his Fourth Amendment confinement claim, that claim
survives summary judgment as to Nassau BOCES, only.  The
following discussion addresses both Plaintiffs' principal claim
and their conspiracy claim.

### a. Hicksville Defendants

Billy's claim must be dismissed against the Hicksville
Defendants because there is no evidence that the School District
or the Hicksville individual defendants were responsible for
Billy's confinement.  Plaintiffs argue that the Hicksville
Defendants had a duty to investigate use of the timeout room
once they had seen Plaintiffs' notice of claim.  (Pl. Hicksville
Opp. at 18.)  But Plaintiffs only served their notice of claim
after they learned of the timeout room themselves and after they

pulled Billy from the Kennedy School. Thus, even assuming that the Hicksville Defendants had a duty to investigate the timeout room once they received notice of its use, they cannot be held responsible for events that pre-dated that notice.

Similarly, there is no evidence that the Hicksville Defendants participated in a conspiracy to deprive Billy of his Fourth Amendment rights. "To prove a [Section 1983] conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Again, Plaintiffs rely on the Hicksville Defendants' alleged failure to investigate the timeout room after they received Plaintiffs' notice of claim. (Pl. Hicksville Opp. at 19.) Clearly, this is not evidence that the Hicksville Defendants conspired to confine Billy in the timeout room in the first place.

Accordingly, Billy claims that his confinement in the timeout room violated his Fourth Amendment right--both his substantive and conspiracy claims--are dismissed as against the Hicksville Defendants.

b. <u>The BOCES Individuals are Qualifiedly Immune</u>

The BOCES Individuals are entitled to qualified immunity from Plaintiffs' Fourth Amendment claim because, at the time of the alleged violation, there was no clearly established federal law such that the defendants had fair warning that their conduct amounted to a constitutional violation. "Government agents enjoy qualified immunity when they perform discretionary functions if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that [their] acts did not violate these clearly established rights." <u>Young v. County of Fulton</u>, 160 F.3d 899, 903 (2d Cir. 1998) (quotations omitted). To be "clearly established" for the purposes of qualified immunity, the right alleged to have been violated must have been "'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say

that in the light of pre-existing law the unlawfulness must be apparent." Id.

Having reviewed the parties' briefs and conducted its own research, the Court cannot say that the BOCES Individuals should have reasonably understood that their alleged conduct violated Billy's Fourth Amendment right to be free from unreasonable seizures. In other words, even if the worst of Plaintiffs' allegations are true, the Defendants could not have had fair warning that this conduct was unreasonable in a constitutional sense. See id. (relevant qualified immunity analysis in Fourth Amendment context may be whether the defendant "reasonably acted unreasonably"); see also Safford Unified School Dist. No. 1 v. Redding, __ U.S. __, 129 S. Ct. 2633, 2644, 174 L. Ed. 2d 354 (2009) (in context of strip searches, finding that the Fourth Amendment's scope in schools was too unsettled to be "clearly established" for qualified immunity purposes).

c. Plaintiffs' Claim Survives as to Nassau BOCES

Billy's Fourth Amendment confinement claim survives as against Nassau BOCES. Although a school district cannot be held liable under Section 1983 based solely on the conduct of one of its employees, it may be liable when "its policy or custom,

27

whether made by its lawmakers or by those whose edicts or acts
may fairly be said to represent official policy, inflicts the
injury." Back v. Hastings on Hudson Union Free School Dist.,
365 F.3d 107, 128 (2d Cir. 2004) (citing Monell v. Dep't of Soc.
Servs., 436 U.S. 658, 689, 98 S. Ct. 2018, 56 L. Ed. 2d 611
(1978)) (quotations omitted); see also BD v. De Buono, 130 F.
Supp. 2d 401, 438 (S.D.N.Y. 2008). Viewing the evidence in
Plaintiffs' favor, Defendant Flora Cohen was arguably a Nassau
BOCES decision-maker with authority over Billy's timeout room
confinement. She was the Kennedy School's assistant principal,
and she at was familiar with Billy's timeout room experience.
(See Pl. Ex. B at 55 (Cohen told Mr. Schafer that Billy had been
sent to the timeout room forty times).) The Court, therefore,
cannot award Nassau BOCES summary judgment on Plaintiffs' Fourth
Amendment claim.

B. State Law Timeout Room Claims

Plaintiffs assert the following state law causes of
action arising out of Billy's timeout room confinement: (i) on
behalf of Billy, a battery claim against John Doe(s); (ii) on
behalf of Billy, a claim against the School District and Nassau
BOCES asserting vicarious liability for battery; (iii) on behalf
of Billy, a claim against John Doe(s) for assault; (iv) on

behalf of Billy, a claim against the School District and Nassau BOCES asserting vicarious liability for assault; (v) on behalf of Billy, a claim against John Doe(s), the Hicksville School District and Nassau BOCES for false imprisonment; (vi) on behalf of Billy, a claim against all Defendants except Dr. Orenstein for negligence; (vii) on behalf of Billy, a claim against the School District and Nassau BOCES for negligent hiring and supervision; (viii) on behalf of both Billy and his Parents, a claim against all Defendants for intentional infliction of emotional distress arising out of Billy's confinement; (ix) on behalf of the Parents, a claim against all Defendants for intentional infliction of emotional distress arising out of the Parents' discovery of Billy in the timeout room; (x) on behalf of Billy, a claim against all Defendants for negligent infliction of emotional distress; and (xi) on behalf of Billy and his Parents, a claim for punitive damages.[7]

> 1. <u>Plaintiffs' State Law Timeout Room Claims are Dismissed Against the Hicksville Defendants and the BOCES Individuals</u>

Plaintiffs' state law timeout room claims are dismissed against the Hicksville Defendants and the BOCES

---

[7] A prayer for punitive damages is not a separate cause of action. <u>See</u> <u>Rocanova v. Equitable Life Assur. Soc.</u>, 83 N.Y.2d 603, 616-17, 612 N.Y.S.2d 339 (N.Y. 1994).

Individuals. As to the BOCES Individuals and the individual Hicksville Defendants, Plaintiffs did not comply with New York's notice of claim requirements. (Pl. Ex. LL.) In New York, General Municipal Law Section 50-e ("Section 50-e") requires plaintiffs to name their defendants in their notice of claim prior to commencing a lawsuit. See Tannenbaum v. City of New York, 30 A.D.3d 357, 358, 819 N.Y.S.2d 4, 5 (1st Dep't 2006); White v. Averill Park Cent. School Dist., 195 Misc. 2d 409, 410, 759 N.Y.S.2d 641, 643 (N.Y. Sup. Ct. Rensselaer Cty. 2003). Here, Plaintiffs only named the School District, (Pl. Ex. JJ), and Nassau BOCES (Pl. Ex. LL). Plaintiffs may not "file a notice of claim naming a municipal entity and then commence an action against a roster of individual municipal employees." White, 759 N.Y.S.2d at 643.

As to the School District, Plaintiffs' state law timeout room claims are dismissed because there is no theory on which they can maintain either their intentional tort claims or their negligence claims. There is no evidence that any Hicksville employee was involved whatsoever in confining Billy to the timeout room. This precludes Plaintiff's attempts to hold the School District vicariously liable for the intentional torts. Plaintiffs' negligence-based claims also fail because

the School District did not owe Billy a duty of care while he was attending classes at the Kennedy School. See Ferraro v. North Babylon Union Free School Dist., 69 A.D.3d 559, 560, 892 N.Y.S.2d 507, 509 (2d Dep't 2010).

Accordingly, Plaintiffs' state law claims are dismissed against the Hicksville Defendants and the BOCES Individuals.

### 2. State Law Timeout Room Claims Against Nassau BOCES

Below, the Court considers Plaintiffs' state law timeout room claims against Nassau BOCES.

### a. Vicarious Liability: Battery and Assault

Plaintiffs' vicarious liability claims for assault and battery are dismissed because they have adduced no evidence that any Nassau BOCES employee committed an underlying assault or battery. "A school district, like any other employer, may be held vicariously liable under the doctrine of respondeat superior for a tort committed by an employee in the course of the performance of the employee's duties." Mary KK v. Jack LL, 203 A.D.2d 840, 611 N.Y.S.2d 347 (3d Dep't 1994); see generally Giambruno v. Crazy Donkey Bar and Grill, 65 A.D.3d 1190, 885 N.Y.S.2d 724, 728 (2d Dep't 2009) ("An employer may be held liable, under the doctrine of respondeat superior, for a tort

committed by an employee acting within the scope of his or her employment."). Here, Plaintiffs assert that Nassau BOCES is vicariously liable for battery and assault committed on Billy while he was attending the Kennedy School. Under New York law, plaintiffs alleging battery must establish intentional, offensive bodily contact. Cerilli v. Kezis, 16 A.D.3d 363, 364, 790 N.Y.S.2d 714, 715 (2d Dep't 2005). To prove assault, plaintiffs must establish physical conduct that placed them in "imminent apprehension of harmful contact." Marilyn S. v. Independent Group Home Living Program, Inc., 73 A.D.3d 892, 894, 903 N.Y.S.2d 403, 406 (2d Dep't 2010) (quotations and citation omitted).

Here, even viewing Plaintiffs' evidence in the most favorable light, there is nothing to show that any of Nassau BOCES' employees committed an assault or battery. And there can be no vicarious liability without an underlying substantive violation. See Trivedi v. Golub, 46 A.D.3d 542, 847 N.Y.S.2d 211, 212 (2d Dep't 2007). Plaintiffs have not amended the Complaint to identify any of the John Does they think are responsible for the assault and battery, and they barely mention who they think are responsible in their brief. In their opposition, Plaintiffs claim that "individual defendants"

32

committed the assaults and batteries, but "individual defendants" is not a defined term. In the section on vicarious liability, they suggest that Defendants Rauscher, Curci and Schaefer battered Billy when they physically escorted him to the timeout room. But Plaintiffs are simply speculating at what happened; there is no evidence that these men assaulted or battered Billy. Plaintiffs argue that the bruises that Billy's father observed are proof that Nassau BOCES employees used force when they escorted Billy to the timeout room. (Pl. BOCES Opp. 41.) These bruises could have been caused by anything, anywhere, and they are insufficient to raise a genuine issue of fact for trial. Similarly, Plaintiffs point to Billy's cries of "no blue room, Mark" as proof that Billy was physically forced into the timeout room. (See id. at 42.) Viewing all the evidence in Plaintiffs' favor, it is clear that Billy disliked the timeout room and that he may have expressed that dislike to his assigned school psychologist, Defendant Mark Curci. It does not follow, however, that "no blue room, Mark" shows that Billy was physically assaulted or battered. Accordingly, Nassau BOCES is entitled to summary judgment on Plaintiffs' assault and battery vicarious liability claims.

b. <u>False Imprisonment</u>

Billy's false imprisonment claim against Nassau BOCES survives summary judgment. To prove false imprisonment under New York law, a plaintiff must show that "the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement and did not consent to the confinement, and that the confinement was not otherwise privileged." <u>Burgio v. Ince</u>, 79 A.D.3d 1733, 913 N.Y.S.2d 864, 865, (4th Dep't 2010). Viewed in the light most favorable to Plaintiffs, the record shows that Billy was confined in the timeout room, he was aware of the confinement and neither he nor his Parents consented to the confinement. And although Defendants suggest that the confinement was privileged, the circumstances under which Billy confined are disputed, and thus it is unclear whether the confinement was reasonably necessary to advance legitimate educational goals. <u>See</u> <u>Matter of Ronald B.</u>, 61 A.D.2d 204, 207, 401 N.Y.S.2d 544 (2d Dep't 1978) (explaining that privilege only extends to conduct "to facilitate the educational functions of a school").

Additionally, there is at least an issue of fact whether Nassau BOCES is vicariously liable for the BOCES Individuals' conduct. As discussed above, employers may be

liable for their employees' intentional torts "if the employee was acting within the scope of the employment" at the time of the tort if the employee's conduct was foreseeable. <u>Ramos v. Jake Realty Co.</u>, 21 A.D.3d 744, 745, 801 N.Y.S.2d 566 (1st Dep't 2005). "[T]he employer need not have foreseen the precise act or manner of the injury as long as the general type of conduct may have been reasonably expected." <u>Id.</u> This is a fact-specific analysis, and thus typically one for the jury. <u>See Young Bai Choi v. D & D Novelties, Inc.</u>, 157 A.D.2d 777, 778, 550 N.Y.S.2d 376 (2d Dep't 1990) ("Because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury.").

c. <u>Negligence</u>

Billy's claim against Nassau BOCES for negligence also survives summary judgment. "In order to prevail in any action premised upon negligence, it must be established that defendant owed plaintiff a duty, that defendant, by act or omission, breached such duty, that such breach was the proximate cause of plaintiff's injuries, and that plaintiff sustained damages." <u>Salvador v. New York Botanical Garden</u>, 71 A.D.3d 422, 422, 895 N.Y.S.2d 410, 422 (1st Dep't 2010). Nassau BOCES owed Billy a

duty of care while he was attending the Kennedy School, see, e.g., Logan v. City of New York, 148 A.D.2d 167, 168, 543 N.Y.S.2d 661 (1st Dep't 1989), and the evidence--viewed in Plaintiffs' favor--establishes that Nassau BOCES' employees, acting within the scope of their employment, breached that duty by confining Billy in the timeout room, causing Billy's suffering. Put differently, a jury could find that confining a disabled, claustrophobic student in a small room whose only window was blocked was unreasonable, and that the confinement harmed Billy.

Relying on Mazzaferro v. Albany Motel Enterprises, Inc., 515 N.Y.S.2d 631, 632-33 (3d Dep't 1987), Defendants principally argue that Plaintiffs' negligence claim fails because they cannot move forward with claims for both intentional torts and negligence that arise out of the same conduct. (See BOCES Br. at 24.) The Court is not persuaded that Plaintiffs' theories are mutually exclusive. A jury could find, for example, that Nassau BOCES is not liable for false imprisonment because in each instance its employees' conduct was reasonably necessary and thus privileged. Notwithstanding that finding that each period of confinement was reasonably necessary, a jury might also find that repeated use of the

timeout room over the course of the school year was not reasonable, and that Nassau BOCES' employees breached their duty of care by confining Billy after they reasonably should have recognized the severe effects it had on his development.

### d. Negligent Hiring and Supervision

The Complaint's thirteenth count asserts causes of action for both negligent hiring and negligent supervision. Nassau BOCES is entitled to summary judgment on both claims, each of which is addressed in turn below.

### i. Negligent Hiring

Nassau BOCES is entitled to summary judgment on Plaintiffs' negligent hiring claim because municipal defendants and their employees have governmental immunity for claims premised their discretionary actions, a point that Plaintiffs do not contest in their opposition. See Tango v. Tulevech, 61 N.Y.2d 34, 40, 471 N.Y.S.2d 73 (N.Y. 1983) ("[W]hen official action involves the exercise of discretion, the officer is not liable for the injurious consequences of that action even if resulting from negligence or malice.") This immunity precludes suits against municipalities for negligent hiring. See Mon v. City of New York, 78 N.Y.2d 309, 574 N.Y.S.2d 529 (N.Y. 1991).

ii. <u>Negligent Supervision</u>

Nassau BOCES is also entitled to summary judgment on Plaintiffs' negligent supervision claim, (<u>see</u> Compl. ¶¶ 164-69), which is premised on Nassau BOCES' assigning Defendant Schaefer, a bus driver, to monitor the timeout room.  Plaintiffs assert that Schaefer was not qualified for the monitor role, that he was not able to see Billy inside the timeout room, and that his desk was not in a position to view the timeout room.  (See Pl. BOCES Opp. 38.)  While "[s]chools are under a duty to supervise students in their charge and will be held liable for foreseeable injuries proximately related to the absence of adequate supervision," there can be no liability "absent a showing that the negligent supervision was a proximate cause of the injury sustained."  <u>Tanenbaum v. Minnesauke Elementary Sch.</u>, 73 A.D.3d 743, 744, 901 N.Y.S.2d 102 (2d Dep't 2010) (citation omitted).

Here, Plaintiffs have not shown that Billy was injured because the timeout room monitor shirked his duties.  Rather, their theory is that Billy was injured by the confinement itself.  Elsewhere in their papers, Plaintiffs suggest that Billy could have suffered a seizure and stopped breathing while confined.  In that event, Plaintiffs argue, school officials would not have realized Billy's distress due to inadequate

supervision. Billy did not stop breathing, however, and there is no evidence that he suffered any injuries that would have been prevented by closer supervision. Accordingly, Nassau BOCES is entitled to summary judgment on Plaintiffs' negligent supervision claim.

e. <u>Intentional Infliction of Emotional Distress</u>

Plaintiffs assert two distinct intentional infliction of emotional distress ("IIED") claims against all Defendants. <u>First</u>, Billy and his Parents assert a claim arising out of the timeout room confinement itself (the "IIED Confinement claim"). <u>Second</u>, Billy's Parents assert a claim arising out of their discovery of Billy in the timeout room (the "IIED Discovery claim"). Under New York law, intentional infliction of emotional distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." <u>Howell v. New York Post Co., Inc.</u>, 81 N.Y.2d 115, 121, 612 N.E.2d 699 (N.Y. 1993); <u>Sawicka v. Catena</u>, 912 N.Y.S.2d 666, 667 (2d Dep't 2010). "The first element--outrageous conduct--serves the dual function of filtering out petty and trivial complaints that do not belong in

court, and assuring that plaintiff's claim of severe emotional distress is genuine." <u>Howell</u>, 81 N.Y.2d at 121 (citations omitted).  Of the four, this element is "the one most susceptible to determination as a matter of law." <u>Id.</u>

### i. IIED Confinement Claim

Billy's IIED claim may go forward against Nassau BOCES.  The Plaintiffs' evidence, viewed in its most favorable light, is that the BOCES Individuals confined Billy, a disabled child with a seizure disorder and claustrophobia, in a small room whose only window was blocked.  Although there appears to be very little in the summary judgment record suggesting that Defendants' conduct was intended to cause Billy emotional harm, whether to infer intent from Defendants' conduct should be left to a jury. <u>See</u> <u>generally</u> <u>Press v. Chemical Investment Services Corp.</u>, 166 F.3d 529, 538 (2d Cir. 1999) ("Whether a given intent existed is generally a question of fact, appropriate for resolution by the trier of fact.") (citation and internal quotation omitted).  Similarly, whether the Defendants' conduct was extreme and outrageous and whether it caused Billy to suffer severe emotional distress are also issues for the jury. Additionally, as with the false imprisonment discussion <u>supra</u>, there is at least an issue of fact whether Nassau BOCES is

vicariously liable for the BOCES Individuals' conduct.  <u>See</u>
<u>Young Bai Choi v. D & D Novelties, Inc.</u>, 157 A.D.2d 777, 778,
550 N.Y.S.2d 376 (2d Dep't 1990).

ii. <u>IIED Discovery Claim</u>

The Parents' claim for intentional infliction of
emotional distress, which allegedly arises out of their
discovering Billy in the timeout room, fails because there is no
evidence that the Parents' suffered severe emotional distress as
a result of Defendants' actions.  <u>See</u> <u>Howell</u>, 81 N.Y.2d at 121
(listing elements).  Plaintiffs refer the Court to deposition
testimony and a report from a psychologist that purportedly
shows that the Parents were traumatized by what happened at the
Kennedy School.  (<u>See</u> Pl. BOCES Opp. at 45.)  In fact, this
evidence tends to show only that Billy was traumatized.
Although the psychologist's report contains a passing
observation that the Parents were "excitable, anxious and highly
reactive when describing their ordeal with Billy's school
discipline," there is nothing to suggest they suffered severe
emotional distress.  (Pl. Ex. M.)  Further, the Court notes that
Plaintiffs' theory that Defendants intentionally meant to
traumatize Billy's Parents by confining their son is at odds
with Plaintiffs' insistence that the Defendants hid use of the

41

timeout room from them. Nassau BOCES are granted summary judgment on this claim.

### f. Negligent Infliction of Emotional Distress

Plaintiffs assert two causes of action for negligent infliction of emotional distress, one on Billy's behalf and one on his Parents' behalf. To recover for negligent infliction of emotional distress in New York, plaintiffs must show (1) that the defendant "unreasonably endangered the physical safety of plaintiffs or caused them to fear for their safety" (2) causation, and (3) emotional injuries. Nicholson v. A. Anastasio & Sons Trucking Co., Inc., 77 A.D.3d 1330, 1331, 909 N.Y.S.2d 244, 245 (4th Dep't 2010); see also Vieira v. Honeoye Cent. School Dist., __ F. Supp. 2d __, 2010 WL 4642922, at *7 (W.D.N.Y. 2010). As with intentional infliction of emotional distress, plaintiffs suing for negligent infliction of emotional distress must establish extreme and outrageous conduct. See Hernandez v. Central Parking System of New York, Inc., 63 A.D.3d 411, 879 N.Y.S.2d 461, 462 (1st Dep't 2009).

### i. The Parents' Claim

The Parents' claim for negligent infliction of emotional distress is dismissed. As discussed above, there is no evidence that the Parents suffered severe emotional distress.

Further, there is no evidence that the Defendants' conduct endangered the Parents or caused them to fear for their safety. See Bernstein v. East 51st Street Development Co., LLC, 78 A.D.3d 590, 591, 914 N.Y.S.2d 3, 4 (1st Dep't 2010) ("[A] cause of action for negligent infliction of emotional distress, which no longer requires physical injury as a necessary element, generally must be premised upon the breach of a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety.") (citations and quotations omitted).

## ii. Billy's Claim

Billy's negligent infliction of emotional distress claim may go forward against Nassau BOCES. Nassau BOCES owed Billy a duty, and there is a genuine dispute whether they negligently caused Billy to suffer emotional injuries by extreme and outrageous conduct that put Billy in fear of physical harm. As was discussed above in the context of intentional infliction of emotional distress, Plaintiffs' evidence suggests that these Defendants confined Billy, a disabled child with a seizure disorder and claustrophobia, in a small room where he could not be seen by the school's assigned monitor. In short, whether the Defendants were negligent in confining Billy to the timeout

room, whether that conduct was extreme and outrageous, whether Billy feared he would have a seizure and stop breathing while the monitor remained oblivious to his distress, and whether that fear caused Billy to suffer emotional trauma are all questions of fact for the jury. And, as with Plaintiffs' false imprisonment and intentional infliction of emotional distress, there are issues of fact as to whether Nassau BOCES may be vicariously liable for its employees' actions. Accordingly, summary judgment as to Billy's claim of negligent infliction of emotional distress against Nassau BOCES is denied.

III. <u>Education/Home Services Claims</u>

The second major component of this case concerns Plaintiffs' allegations that all Defendants deprived Billy of a free and appropriate education ("FAPE"). As best as the Court can discern, Plaintiffs allege that the Defendants violated their rights by withdrawing home instruction from Billy's IEP, denying Billy home occupational and speech therapy, and conditioning the re-instatement of Billy's home academic instruction on his return to the Kennedy School. Plaintiffs appear to assert (1) Section 1983 claims (including conspiracy) that Defendants violated Plaintiffs' substantive due process, procedural due process and equal protection rights; (2) claims

under IDEA, the ADA and the New York State Constitution that the Defendants deprived Billy of his FAPE; and (3) a claim for breach of contract. The Court addresses these claims in turn, but it first briefly addresses Defendants' exhaustion argument.

A. Exhaustion of Administrative Remedies

"It is well settled" that the IDEA generally "requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 112 (2d Cir. 2004). The exhaustion requirement applies not only to IDEA claims, but also to claims under any federal statute where the relief sought is also available under IDEA. Id. As noted above, Plaintiffs filed this lawsuit on May 23, 2006, several months before they filed their administrative due process complaint with the District in October 2006. Although their suit was filed prematurely, Plaintiffs eventually did exhaust their administrative remedies: A hearing was held, and Plaintiffs appealed the hearing officer's decision to the State Review Officer, who awarded Plaintiffs ten months of compensatory home services. In the interest of judicial efficiency, the Court elects not to untangle the exhaustion issues because it finds that Plaintiffs' FAPE-related claims

fail on other grounds.

The Court is troubled, however, that Plaintiffs make no effort whatsoever to address whether and how the State Review Officer's decision awarding them ten months of services bears on their FAPE claims. It appears that certain aspects of Plaintiffs' Complaint are obsolete, or at least warrant some explanation of why the Plaintiffs believe they are entitled to more relief than has already been awarded. Despite extensive briefing in this case, Plaintiffs utterly fail to provide that explanation. Plaintiffs' shortcoming in this regard is the backdrop against which the following discussion rests.

B. <u>Section 1983 Claims</u>

Plaintiffs assert Section 1983 claims based on the Fourteenth Amendment. The Court also addresses whether Plaintiffs may attempt to redress IDEA violations through Section 1983.

1. <u>Procedural Due Process</u>

Plaintiffs' FAPE-related procedural due process claims, which Plaintiffs clarify as stemming from Defendants' "summarily remov[ing] Plaintiff Billy's home based program without any in-put or notice to Plaintiffs," (Pl. Hicksville Opp. at 17), cannot survive summary judgment. "Analysis of a

procedural due process claim is composed of two prongs. First, the court must discern 'whether the plaintiff has a property or liberty interest protected by the Constitution.' If such an interest exists, '[the] court must then consider whether the government deprived the plaintiff of that interest without due process.' Thus, under this second step of the analysis, the court must ask "what process was due to the plaintiff, and . . . whether that constitutional minimum was provided in the case under review." Alleyne v. New York State Educ. Dept., 691 F. Supp. 2d 322. 336-37 (N.D.N.Y. 2010) (quoting Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988)).

Here, assuming for argument's sake that Plaintiffs were deprived of a constitutionally-protected interest in having an opportunity to discuss the removal of Billy's home-based academic instruction, Plaintiffs cannot satisfy the second prong of the analysis because they cannot show--in fact, they do not even try--that the post-deprivation remedy under IDEA was inadequate. The IDEA hearing procedure satisfies procedural due process requirements, see Does v. Mills, 2005 WL 900620, at *9 (S.D.N.Y. 2005), and there is no suggestion that Plaintiff's hearing was procedurally deficient or even that it failed to provide Plaintiffs adequate relief. Accordingly, Defendants are

47

entitled to summary judgment on Plaintiffs' FAPE-related procedural due process claim.

### 2. Substantive Due Process

Plaintiffs also appear to claim that Defendants violated their substantive due process rights to Billy's FAPE by, among other things, withdrawing home academic services and then conditioning their reinstatement upon the Parents' decision to return Billy to the Kennedy School. Plaintiffs have not shown that the Defendants deprived them of a constitutionally-protected interest. "'Education, of course, is not among the rights afforded explicit protection under our Federal Constitution.' Thus, '[t]he Fourteenth Amendment does not protect a public education as a substantive fundamental right.'" Smith v. Guilford Bd. of Educ., 226 F. App'x 58, 61 (2d Cir. 2007) (quoting San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973) and Handberry v. Thompson, 436 F.3d 52, 70 (2d Cir. 2006)); Rafano v. Patchogue-Medford School Dist., No. 06-CV-5367, 2009 WL 789440, at *7 (E.D.N.Y. Mar. 20, 2009). Accordingly, Defendants are entitled to summary judgment on Plaintiff's FAPE-based substantive due process claims.

### 3. Equal Protection

Defendants are also entitled to summary judgment on Plaintiffs' Equal Protection claims because Plaintiffs have not identified "any official action that distinguished between disabled students and others." Pape v. Board of Educ. of the Wappingers Cent. Sch. Dist., No. 07-CV-8828, 2009 WL 3151200, at *6 (S.D.N.Y. 2009). Further, to the extent Billy was denied a FAPE because of his disability, this is the type of violation that should be redressed through IDEA. See id. "Indeed, courts have held that the denial of equal access to public education for disabled students is precisely the type of alleged discrimination protected by statutory authority under the IDEA, Section 504, and the ADA." Id. To the extent Plaintiffs claim that Billy was a "class of one"--"where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"--this claim fails because Plaintiffs have not identified anyone similarly situated. Id. at *6-7.

### 4. Asserting IDEA through Section 1983

To the extent that Plaintiffs attempt to enforce IDEA through Section 1983--and again, the Complaint is not a model of clarity--Plaintiffs' claims fail because they have not shown

that they were unable to use the IDEA's administrative remedies to obtain the relief to which they were entitled under the statute. Unlike many Circuits, which do not permit plaintiffs to use Section 1983 to redress IDEA violations, see, e.g., D.A. ex rel. Latasha A. v. Houston Independent School Dist., 629 F.3d 450, 456 (5th Cir. 2010); A.W. v. Jersey City Public Schs., 486 F.3d 791, 803 (3d Cir.2007) (en banc); Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 28 (1st Cir. 2006), the Second Circuit permits IDEA-based Section 1983 claims, but only where the plaintiff was denied the procedural or administrative remedies that IDEA provides. See Streck v. Board of Educ. of East Greenbush Sch. Dist., 280 F. App'x 66, 68 (2d Cir. 2008); see also Quackenbush v. Johnson City Sch. Dist., 716 F.2d 141, 148 (2d Cir. 1983); K.M. ex rel. A.M. v. Manhasset Union Free Sch. Dist., No. 04-CV-1031, 2006 WL 1071568, at *7 (E.D.N.Y. 2006). Here, Plaintiffs availed themselves of IDEA's corrective procedures and were awarded relief under the statute. Consequently, they may not now use Section 1983 to sue for damages under IDEA. See, Streck, 280 F. App'x at 68 ("Plaintiffs fail to allege a denial of procedural safeguards or administrative remedies: they were afforded a hearing before an impartial hearing officer and review by a state review officer .

. . . . Therefore, plaintiffs may not rely on § 1983 to pursue monetary damages for violations of the IDEA.").

C. Federal Statutory Claims

Plaintiffs also assert claims under IDEA itself and under the Americans with Disabilities Act (the "ADA"). The Court addresses each in turn.

1. IDEA

Plaintiffs' fourth count asserts a claim under IDEA for compensatory damages plus legal fees and costs. (Compl. ¶ 121.) Defendants are entitled to summary judgment on this claim because compensatory damages are not recoverable under IDEA. Polera v. Board of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 486 (2d Cir. 2002). As the Second Circuit explained, "[t]he purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy . . . is fundamentally inconsistent with this goal." Id. at 286. Plaintiffs may, in some cases, be reimbursed for educational expenses they incurred as a result of an IDEA violation. Id. Here, however, Plaintiffs' Count Four seeks $10 million in compensatory damages. Even if the Court were to treat this as a request to be reimbursed for Plaintiffs' educational expenditures, Plaintiffs point to no evidence that

they actually incurred these costs.

2. ADA

Plaintiffs' ADA claim fails because there is no evidence that Billy was treated unequally because of his disability. "In order to establish a violation under the ADA, the plaintiffs must demonstrate that (1) they are "qualified individuals" with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003). Here, there is no evidence that Billy was discriminated against because of his disability. To the extent Plaintiffs assert that they were victims of retaliation, their claim fails because they point to no evidence that any decision-makers were aware that Plaintiffs had filed the notices of claim at the time when Defendants allegedly conditioned the reinstatement of Billy's service upon the Parents' returning Billy to the Kennedy School. (See Hicksville Br. 16; Hicksville Reply at 10 n. 7 (noting Plaintiffs' failure to oppose their arguments concerning the retaliation claims).) That a defendant

be aware of a plaintiff's protected activity is a required component of retaliation claims under both the ADA and the First Amendment. See, e.g., Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (stating elements of ADA retaliation claim); Wood v. Town of East Hampton, No. 08-CV-4197, 2010, WL 3924847, at *7 (E.D.N.Y. Sept. 30, 2010 (in First Amendment retaliation case, requiring plaintiff to show that defendant's action was motivated by plaintiff's actions). Accordingly, Defendants are entitled to summary judgment on Plaintiffs' ADA claim.

D. New York State Constitution

Plaintiffs' claim that Defendants violated Billy's right to an education secured by Article XI, Section 1 of the New York State Constitution fails because Article XI, Section 1 does not create a private right of action. See K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist., 381 F. Supp. 2d 343, 353 (S.D.N.Y. 2005). In their opposition, Plaintiffs argue that this provision of the New York State Constitution largely tracks IDEA. (Pl. Hicksville Opp. 22-23.) As discussed above, Plaintiffs' IDEA claims do not survive summary judgment, either.

E. Breach of Contract

Plaintiffs also claim that Defendants breached a contract with Plaintiffs by withdrawing home instruction from

Billy's IEP. (Compl. 173.) Defendants are entitled to summary judgment on this claim, too. Setting aside the dubious notion that a breach of contract action can arise out of an IEP dispute--a proposition for which Plaintiffs have offered no meaningful authority--there is no evidence that Plaintiffs are entitled to any compensatory damages beyond the compensatory home instruction awarded by the State Review Officer. See, e.g., Harris v. Seward Park Housing Corp., 79 A.D.3d 425, 913 N.Y.S.2d 161, 162 (1st Dep't 2010) (noting that elements of breach of contract claim under New York law "include the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages"). Accordingly, the Court awards summary judgment to Defendants on Plaintiffs' breach of contract claim.

## CONCLUSION

The Hicksville Defendants' and the BOCES Individuals' motions for summary judgment are GRANTED. (Docket Entries 79 and 77, respectively.) Nassau BOCES' motion for summary judgment is GRANTED IN PART. (Docket Entry 78) Plaintiffs' Fourth Amendment, false imprisonment, negligence, intentional infliction of emotional distress and negligent infliction of emotional distress claims may go forward against Nassau BOCES.

Plaintiffs' remaining claims are DISMISSED. Plaintiffs and Nassau BOCES are directed to appear before this Court on April 29, 2011 at 9:30 a.m. for a pre-trial conference.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    March \_\_31\_\_, 2011
          Central Islip, New York